# Cross Country Sportswear Corporation Appeal

*Manuel Kraus*, for appellant.

*T. McKeen Chidsey*, Attorney General, and *Morley W. Baker*, Special Deputy Attorney General, for Commonwealth.

RICHARDS, P. J., August 10, 1949.—This is an appeal by the Cross Country Sportswear Corp., from a determination of the Bureau of Employment and Unemployment Compensation, of the Department of Labor

and Industry, of the Commonwealth of Pennsylvania. The determination appealed from relates to a change of the rate of contribution for the calendar year 1947. The appeal was brought under the provisions of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, sec. 301(*h*), as amended by the Act of May 29, 1945, P. L. 1145, sec. 5. At the hearing before the court, the parties filed a stipulation of facts, and in due time the case was argued before the court en banc.

### Facts

Appellant is a New York corporation, duly authorized to carry on business in Pennsylvania. The date on which it began to do business here was November 1, 1946. For that year its rate of contribution under the act was fixed at 2.7 percent, which was also the rate fixed for 1947. On July 1, 1947, it acquired two of the three plants formerly owned and operated by the Universal Pants Company, a partnership, which was a contributing employer under the Pennsylvania Unemployment Compensation Law. The partnership, for 1947 and for previous years, had been assigned a contribution rate of one percent. The partners of the Universal Pants Company, and the stockholders of the appellant, were the same individuals and their respective interests in each organization were the same.

On December 11, 1947, an application for predecessor's employer experience was filed. This application was dated July 30, 1947, and was executed by appellant and by the Universal Pants Co. Although advised that the rate of appellant would be 2.7 percent for the balance of the calendar year, appellant filed returns for the third and fourth quarters of 1947 in which it computed its contributions at the rate of one half of one percent. The bureau on January 14, 1948, finally determined the rate of contribution to be 2.7 percent.

Appellant, before acquiring the two plants aforesaid had 38 employes and thereafter had 500 additional employes.

The third plant of the Universal Pants Company, a partnership, was transferred to the Universal Pants Co., Inc., a newly formed corporation, on July 1, 1947. The new company was given a contribution rate of one half of one percent.

The stipulation provides that if the appeal is sustained, the rate of contribution of appellant for the last two quarters of 1947, shall be one half of one percent; otherwise it shall remain 2.7 percent. This proviso of the stipulation results from the fact that the contribution rate of the Universal Pants Co., was reduced from one percent to one-half of one percent by virtue of the provisions of the Act of June 10, 1947, P. L. 1469, sec. 313.

The nineteenth paragraph of the stipulation states the legal question involved to be:

"Where an employer has been assigned an unemployment compensation contribution rate of 2.7 percent for a calendar year, and thereafter such employer acquires the business of another employer to whom an unemployment compensation contribution rate of one half percent has been assigned for such calendar year, is the successor-employer, under the provisions of the Unemployment Compensation Law, entitled to the reduced rate assigned to the predecessor-employer for the balance of such calendar year?"

## Discussion

The Bureau of Employment and Unemployment Compensation, hereinafter referred to as the bureau, contends that where an annual rate of contribution has been fixed for an employer, that such rate may not be changed during said calendar year, except to maintain

the safety factor as provided in section 301 (f). On the contrary, appellant contends that the rate may be changed during the calendar year when an employer acquires the business of another having a more favorable rate, provided that the experience of the selling employer be considered indicative of the future employer experience of the purchasing employer.

At the outset we may say that appellant contends that it was advised, by field representatives of the bureau, before it acquired the two plants in question, that it could get the benefit of the preceding employer's experience, and have its rate of contribution reduced during the calendar year 1947. We attach no importance to the exhibit or to the advice said to have been given. Even though given, it was not an official determination, and the provisions of the law supersede any private advice, or any rules or regulations inconsistent with the law. Furthermore, in this case the provisions of section 301 (f), relating to the safety factor, are not involved, nor is the question of probable future employer experience.

The sole issue before us is one of law. May an annual rate of contribution be changed during a calendar year to give an employer the benefit of the rate of another employer whose business he has acquired?

Experience rating was first introduced into the Unemployment Compensation Law by the Act of May 26, 1943, P. L. 639. However, the law which controls the present case is section 301 of the Act of May 29, 1945, P. L. 1145, which was reënacted and amended by the Act of June 10, 1947, P. L. 498. The section in question became effective January 1, 1946.

The act fixes the basic rate of contribution for each calendar year at 2.7 percent. However, this rate may be reduced by a favorable experience. No claim is made

in this case for a reduced rate based upon appellant's employer experience. On the contrary, appellant's claim is based solely on the provisions of subsection (*g*) of section 301, Act of May 29, 1945, supra.

Subsection (*g*) bears the heading: "Successor-in-interest". It contains two paragraphs, Paragraph (1) provides, that an employer who, prior to January 1, 1946, acquires the business of another employer, in whole or in part, shall *immediately* notify the department, and *for the purpose of ascertaining the rate of contribution,* his employer's experience shall include that of the prior employer. This language suggests, in view of the heading, that the employer who acquires the business of another, is a successor-in-interest. The transfer of employer experience is mandatory for the purpose of ascertaining the rate of contribution. It will be noted that this paragraph mentions a *rate of contribution,* not an annual rate of contribution, or a rate for a calendar year. The requirement of immediate notice implies a right to use the acquired experience forthwith to obtain a more favorable rate, otherwise there would be no urgency. If the rate for the calendar year is fixed and immutable, and may in no case be affected by the acquisition of the predecessor employer's experience, there would be little point in requiring immediate notice of the acquisition of the business.

The significance of these observations is enhanced by the fact that section 301 (*g*) of the Act of May 26, 1943, contains substantially similar provisions in force before the effective date of the Act of May 29, 1945. This militates against the idea that the purpose of immediate notice is to furnish data to be used in fixing a rate for the succeeding calendar year.

The second paragraph of section 301 (*g*) of the Act of May 29, 1945, is new. It provides that an employer who, subsequent to December 31, 1945, transfers his

business, in whole or in part, to a successor-in-interest, may jointly make application with the successor-in-interest for transfer of the preceding employer's experience to said successor-in-interest. The department may allow such transfer only if it finds that the experience of the preceding employer may be considered indicative of the future employer's experience of the successor-in-interest.

There was a joint application here for transfer of the preceding employer's experience. The plants involved were transferred after December 31, 1945. There was no finding that the previous employer's experience was not indicative of future employer's experience. The transfer of the employer experience, and the consequent reduction of rate, was refused solely upon the ground that the rate of contribution having been fixed for the calendar year could not be reduced during the calendar year. The bureau has argued that the transfer of experience and reduction of rate may be allowed only to a successor-in-interest who never theretofore had been an employer. We can find nothing in the act to justify this conclusion. While the act contains many statutory definitions, it does not define successor-in-interest. A successor-in-interest is one who succeeds to the interest of another. He may be one who previously was an employer, or one who theretofore never was an employer. The purpose of paragraphs (1) and (2) is to transfer employer experience with the consequent effect upon the rate of contribution. In paragraph (1) it is not only mandatory, but unilateral. In paragraph (2) it is discretionary and bilateral. In neither case is there any legislative prohibition against the reduction of a rate during the calendar year. The intent of the legislature, it seems to us, was just the opposite. It intended to allow a reduction of the rate, during a calendar year, upon compliance with the terms of the statute. The

taxpayer should be entitled to the benefit of any doubt. He should not be deprived of an advantage by an unjustified technical construction, or by administrative rules or practice, not founded upon a legislative mandate, but rather upon what is read into the statute. It would seem to be incongruous to allow a successor with no previous employer experience an advantage denied to a successor who has had previous employer experience, especially when the successor-in-interest is owned and controlled by the same parties who conducted the prior business. Yet that is exactly what the bureau contends.

It is our conclusion therefore, that section 301 of the act in question was expressly designed to enable a successor-in-interest to acquire the predecessor employer's experience with the attendant effect upon the contribution rate; that the term successor-in-interest comprehends both those who were, and those who were not, previously employers; that there is no legislative prohibition against changing a contribution rate in such cases during a calendar year; that upon joint application the rate may be reduced during a calendar year, provided the prior experience is indicative of future experience; and that a right of appeal exists from the determination of an annual rate or any modification thereof, as provided in section 301(g). Accordingly, the appeal must be sustained.

### Decree

And now, to wit, August 10, 1949, the appeal is sustained and it is hereby ordered and decreed that the rate of contribution of appellant from July 1, 1947, to December 31, 1947, shall be at the rate of one half of one percent, as provided by the stipulation.