## Williams *v.* Civil Service Commission.

Argued September 12, 1972, before Judges KRAMER, MENCER and ROGERS, sitting as a panel of three.

*Scott A. Williams,* appellant, for himself.

*Justin J. Blewitt,* Deputy Attorney General, with him *James J. Morley,* Assistant Attorney General, for appellee.

*Feldmann and Ciotola, Joseph D. Shein, Shein, Mele & Brookman, Morton Fromm, John J. Dunn,* and *James W. Reynolds* for amicus curiae, Pennsylvania Joint War Veterans Council.

OPINION BY JUDGE KRAMER, February 23, 1973:

This is an appeal from an order of the State Civil Service Commission (Commission) dismissing the appeal of Scott A. Williams, Esq. (Williams) from his removal as an Appeals Referee I, provisional status, by the appointing authority, viz., Secretary of Labor and Industry (Secretary).

Williams was appointed, on a provisional basis, to the position of an Unemployment Compensation Appeals Referee I, on May 9, 1969, by the Governor of the Commonwealth. He served in that capacity in the Williamsport area to December 1, 1971, at which time his said employment was terminated by the Secretary.

In June of 1971, the Unemployment Compensation Board of Review made a second provisional appointment of an Appeals Referee I for the Williamsport area.

This second provisional appointment was granted to Dean Fisher, Esq. (Fisher). In that same month, June 1971, the Commission conducted a Civil Service examination for the establishment of an eligibility list for permanent employment in the classified service for the positions which Williams and Fisher held as provisional appointees. The results of the examination are shown on the "Certification of Eligibles," otherwise known as the eligibility list, which was made a part of the record. It shows Fisher with 86.60 points and Williams with 83.00 points. The other names on the list are made up of candidates, either from other administrative districts or from a list of what is known as "informal names" of persons already in the classified service who may be considered for promotion. The record establishes that Fisher became No. 1 on the list because of ten additional points added to his examination mark in compliance with the Veterans Preference Act, Act of May 22, 1945, P. L. 837, §3, 51 P.S. §492.3, which provides that a veteran who has successfully passed the Civil Service examination for a public position in the Commonwealth shall receive an additional ten points above the mark or grade (sometimes called "raw score") received in the examination.

At the date (October 4, 1971) of the publication of the eligibility list, the number of positions which were available for appointment by the appointing authority was two. However, on November 19, 1971, the appointing authority (Secretary) decided, for what it called budgetary reasons, to eliminate entirely one of the two positions from the Williamsport district. The Secretary, therefore, appointed Fisher to the classified service as an Appeals Referee I, and notified Williams of the termination of his employment, which brought about Williams' appeal to the Commission.

The record clearly shows, and it was also stipulated, that Williams' performance record as an Appeals Ref-

cree I indicated very good performance ratings; and in addition to his passing the examination, it was agreed that Williams qualified for the position.

It is important to note that Williams' appeal to the Commission was based upon his contention that his dismissal was based upon political and partisan reasons and therefore, in violation of the Civil Service Act, Act of August 5, 1941, P. L. 752, as amended, 71 P.S. §§741.1, et seq., and more specifically, Section 905.1 of the Act, 71 P.S. §741.905(a). His initial appeal to the Commission did not mention the Veterans Preference Act.

In the hearing before the Commission, Williams presented in his case in chief what we would characterize from our reading of the record as a weak case unsuccessfully attempting to prove a political motivation for the appointment of Fisher in preference to Williams. Thereafter, the appointing authority presented evidence whereby it satisfactorily countered the contention of a political bias in the appointment of Fisher. In addition, the appointing authority proffered evidence that Williams would not have been considered for the single opening for the position of Appeals Referee I because of the Veterans Preference Act. It was contended that Williams could not have been given preference because Fisher was a veteran and Williams was not.

In appealing to this Court, Williams raises two questions. First, he contends that the Commission erred in not finding that his employment was terminated for non-merit factors in violation of Section 905.1 of the Civil Service Act. Secondly, he contends that the Commission's conclusion No. 3, "Appellant's removal resulted from his inability to qualify for veterans' preference under the Act . . ." violates his constitutional rights under the Equal Protection Clause of the 14th Amendment of the United States Constitution.

Our scope of review is to determine whether the Commission abused its discretion or committed an error of law. The Civil Service Act, at Section 951(c), 71 P.S. §741.951(c) states that: "All final decisions of the commission shall not be reviewable by any court." This section was voided by the adoption of Article V, Section 9 of the Pennsylvania Constitution of 1968, and subsequently Section 47 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.47, which now permits an appeal from an adjudication of an administrative agency such as the Commission. See *Corder v. Civil Service Commission*, 2 Pa. Commonwealth Ct. 462, 279 A. 2d 368 (1971).

Although Williams was a provisional employe (*See* 71 P.S. 741.604) whose appointment could only continue until an eligibility list was established and certification made therefrom, he was still protected from discrimination on a non-merit basis under Section 905.1, 71 P.S. §741.905(a). We have carefully reviewed the record in this case and conclude that there is not sufficient substantial evidence to support the contention of Williams that his employment was terminated for political reasons. Williams certainly knew that the acceptance of a provisional appointment did not confer upon him "any rights of permanent tenure, transfer, promotion or reinstatement." (71 P.S. §741.604.) The record adequately explains that the appointing authority believed it was in need of two Appeals Referees I in the Williamsport area, but that this desire was not thereafter obtainable because of budgetary problems arising out of federal fund controls.

The second contention of Williams, however, is more difficult. Williams contends that governmental employment is a "fundamental right," the infringement upon which gives rise to the necessity for the Commonwealth to justify its preferential treatment of veterans

by a showing of a compelling state interest. No court in this land, of which we have knowledge, has raised public employment to the status of a "fundamental right" or "interest," thereby necessitating a compelling state interest to justify a given classification. The position we take has been aptly stated in *Koelfgen v. Jackson*, Civ. Action, 4-71-314 (D. Minn. Sept. 20, 1972), which is a case where the United States District Court upheld the constitutionality of a similar veterans preference statute. The court there said: "Courts should be reluctant to find a right to be 'fundamental,' unless it is clearly set out in the Constitution. By so finding, the Court subjects legislation affecting that right to much closer scrutiny, a situation which invites conflict between the courts and the legislature. This type of conflict should be avoided except when a right which is clearly at the foundation of our system of government is involved. Only then should the legislature's considered judgment be subject to the 'compelling state interest' test. The 'right to be fairly considered for public employment,' as the term is used by the plaintiffs, clearly is not such a 'fundamental right.' Therefore, the [appointing authorities] were under no burden to show a compelling state interest."

The other principle under which the appointing authority would bear the burden of proving a compelling state interest is one involving a "suspect criterion." *Korematsu v. U. S.*, 323 U.S. 214, 216 (1944) and *Harper v. Virginia Board of Elections*, 383 U.S. 663, 688 (1966). Williams, in this case, has not even suggested that the classification of veteran vis-a-vis non-veteran comes within the suspect criterion, the usual being race, nationality and religion. Absent the involvement of "a fundamental right or interest" or a "suspect criterion," the traditional "rational basis" test must be applied to determine the validity of the Veterans Preference Act. *See Koelfgen v. Jackson, supra.* A careful

search of the record in this case fails to disclose any testimony whatsoever which would show that extending benefits to veterans as a reward for past military service is irrational. *See Feinerman v. Jones,* Civ. Action, 72-94 (D. Pa. Jan. 10, 1973), where Pennsylvania's Veterans Preference Act was most recently upheld, by the United States District Court for Central Pennsylvania.

As we have said so many times, a person contending that a statute is unconstitutional has a very heavy burden to prove the unconstitutionality of the provision he attacks (e.g., *see Heller v. Depuy,* 2 Pa. Commonwealth Ct. 196, 277 A. 2d 849 (1971)). Our Supreme Court said in the case of *Rubin v. Bailey,* 398 Pa. 271, 157 A. 2d 882 (1960) : "First of all, the Statutory Construction Act of 1937 admonishes 'That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth': Act of May 28, 1937, P. L. 1019, Art. IV, §52(3), 46 P.S. §552(3). Thus, a legislative enactment is attended by a legal presumption of its constitutional validity. In Hadley's Case, 336 Pa. 100, 104, 6 A. 2d 874, it was said to be '. . . axiomatic that he who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so. . . . All presumptions are in favor of the constitutionality of acts and courts are not to be astute in finding or sustaining objections to them.' Of course, the presumption of constitutionality is not conclusive but the requirements for rebutting it are indeed exacting. Consequently, ' ". . . we can declare an Act of Assembly void, only when it violates the Constitution *clearly, palpably, plainly; . . ."* ': Tranter v. Allegheny County Authority, 316 Pa. 65, 75, 173 A. 289, quoting Sharpless v. Mayor of Philadelphia, 21 Pa. 147, 164. As was more comprehensively stated in Kelley v. Baldwin, Auditor General, 319 Pa. 53, 54, 179 A. 736, 'An Act may not be declared unconstitu-

tional unless "it violates the constitution *clearly, palpably, plainly;* and in such manner as to leave *no doubt* or hesitation in our minds" '. . . ." (Emphasis in original.) 398 Pa. at 275-276, 157 A. 2d at 884.

In this case, Williams did not present any evidence that his employment was terminated because of the Veterans Preference Act. Rather, all of Williams' direct case was channeled towards his contention that politics was involved in his termination. The only evidence upon which Williams could base the contention now before this Court was presented by the witnesses for the appointing authority.

In view of the fact that the Commission did make conclusion of law No. 3, as stated above, we must pass upon this issue now raised by Williams. Section 3 of the Veterans Preference Act, 51 P.S. §492.3, states as follows: "Whenever any soldier shall successfully pass a civil service appointment or promotional examination for a public position under the Commonwealth, or any political subdivision thereof, and shall thus establish that he possesses the qualifications required by law for appointment to or promotion in such public position, a soldier's examination shall be marked or graded an additional ten points above the mark or grade credited for the examination, and the total mark or grade thus obtained shall represent the final mark or grade of such soldier, and shall determine his standing on any eligible or promotional list, certified or furnished to the appointing or promoting power." Our Pennsylvania Supreme Court has consistently upheld the ten points preference for veterans seeking an *initial* appointment under the Civil Service Act. In *Commonwealth ex rel. Graham v. Schmid,* 333 Pa. 568, 3 A. 2d 701 (1938), the Court held that so long as the veteran possessed the minimum qualifications to perform the duties involved (i.e., a successful passing of the Civil Service examination), the ten-point advantage was constitutional. The

Court there stated that there must be some reasonable relationship between the basis of the preference and the object to be obtained by the Commonwealth. The Court stated: "As a basis for appointment it is not unreasonable to select war veterans from candidates for office and to give them a certain credit in recognition of the discipline, experience and service represented by their military activity. No one should deny that these advantages are conducive to the better performance of public duties, where discipline, loyalty, and public spirit are likewise essential. The fact that veterans, either through voluntary enlistment or conscription, have been to wars for the preservation of their country should be given some consideration. It is the greatest service a citizen can perform, and it comes with ill grace for those of us not in such wars to deny them just consideration. Where the preferences reasonably and fairly appraise these advantages, there can be no question of illegal classification and arbitrary privilege. But, on the other hand, where war service is appraised, in the allotment of public positions, beyond its value, and the preference goes beyond the scope of the actual advantages gained in such service, the classification becomes void and the privilege is held unreasonable and arbitrary. Public policy demands such a rule of law. It is essential to the administration of public affairs that governmental employees be selected on the basis of their ability to perform the duties imposed upon them in an efficient manner, and if public servants are not selected on this basis, the appointing power violates its oath of office; where the legislature so provides, it offends the constitutional mandate." 333 Pa. at 573-574, 3 A. 2d at 704.

Later, in another case, the Supreme Court stated that so long as the statute requires passage of the examination, a veteran may constitutionally be preferred over a non-veteran whether the statute be mandatory or

directory. *See Carney v. Lowe,* 336 Pa. 289, 9 A. 2d 418 (1939). In the *Carney* case, however, the Court held that a provision which exempted only veterans from an age requirement was unconstitutional.

The Supreme Court again passed on the question of preferential examination points for veterans in the case of *Commonwealth ex rel. Maurer v. O'Neill,* 368 Pa. 369, 83 A. 2d 382 (1951). In that case, the Court again referred to the test that there must be some relationship between the basis of the preference and the object to be obtained by the Commonwealth. The Court there approved the ten-point advantage in *original* appointments, but held that such an advantage is unconstitutional for use in *promotions.*

It seems clear that the law is well established in this Commonwealth that a ten-point advantage established by the Veterans Preference Act for original appointments is constitutional. Preferential advantage to veterans is based upon public policy. Section 2 of the Act, 51 P.S. §492.2 acknowledges that the bonus granted to veterans is in recognition of "the discipline and experience represented by his military training and for the loyalty and public spirit demonstrated by his service for the preservation of his country."

Williams also contends that his constitutional rights have been violated by another section of the Veterans Preference Act, i.e., Section 4 (51 P.S. §492.4), which reads:

"Whenever any soldier possesses the requisite qualifications and is eligible to appointment to or promotion in a public position, where no such civil service examination is required, the appointing power in making an appointment or promotion to a public position shall give preference to such soldier.

"Whenever any soldier possesses the requisite qualifications, and his name appears on any eligible or promotional list, certified or furnished as the result of any

such civil service examination, the appointing or promoting power in making an appointment or promotion to a public position shall give preference to such soldier, notwithstanding, that his name does not stand highest on the eligible or promotional list.

"In making an appointment or promotion to public office where such a civil service examination is required, the appointing or promotional power may give preference to any soldier, who has passed the required examination for appointment or promotion to such position, and possesses the requisite qualifications, although his name does not appear on the eligible or promotional list certified or furnished to the appointing or promoting power."

As we have already alluded, there were just two names from the subject administrative district under consideration for appointment to Appeals Referee I in the classified service as shown on the eligibility list involved in this case. The appointing authority determined that only one Appeals Referee I could be appointed. This determination was within the discretionary power of the appointing authority. By virtue of our conclusion that the additional ten points which were given to Fisher was constitutional, the eligibility list in this case properly indicated Fisher as the candidate with the highest number of points. The appointing authority was well within its power to choose one of the two possible candidates. It had the power to choose Fisher, which it did. Williams' earlier employment, and his longer time of service, as a provisional appointee, did not bind the authority to select him.

Even though we are now addressing the mandatory preference provision of Section 4 of the Act, Williams' contention cannot be sustained. Williams bore the heavy burden to prove that the appointing authority had violated his constitutional rights by preferring

Fisher over himself. There is no way the record in this case could support such a heavy burden.

Having established that the right to public employment in this case is not based upon a "suspect criterion" nor affects a "fundamental right" or "interest," the appointing authority did not have the burden to show a compelling governmental interest. Rather it was incumbent upon Williams to show that no rational basis existed for the classification and resultant action of the appointing authority.

Our conclusion is that Williams failed to prove that he did not receive the appointment for non-merit reasons; and secondly, Williams did not meet his heavy burden of proving that his appointment was denied by virtue of any faulty classification under the Equal Protection Clause of the 14th Amendment of the United States Constitution.

The Order of the Commission is affirmed.