Janet S. Gilman, Appellant *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee.

Argued December 6, 1976, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*Thomas B. Schmidt, III,* for appellant.

*David Max Baer,* Deputy Attorney General, with him *J. Justin Blewitt, Jr.,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 25, 1977:

This appeal from the disallowance of unemployment compensation benefits attacks the validity, un-

der equal protection principles of the Federal Constitution and the Equal Rights Amendment to the Pennsylvania Constitution, of Section 402(b)(2) of the Unemployment Compensation Law (Law).[1] We hold that there is no constitutional infirmity in the statute.

Janet S. Gilman (Claimant) was employed by the Pennsylvania Department of Justice in Philadelphia until April 30, 1975, when, having given the Department thirty days' notice, she terminated her employment to accompany her husband who was transferred to Harrisburg. Unable to find employment in Harrisburg, she applied for unemployment compensation benefits. It is undisputed that during a substantial part of the six month period prior to leaving work or to filing a claim for benefits, Claimant was not the sole or major support of her family; and the Bureau of Employment Security (Bureau) disallowed her claim under the provisions of Section 402(b) which state, in pertinent part:

An employee shall be ineligible for compensation for any week—

. . . .

(b)(1) In which his unemployment is due to voluntarily leaving work without cause of necessitous and compelling nature, irrespective of whether or not such work is in 'employment' as defined in this act. . . .

(2) In which his or her unemployment is due to leaving work (I) to accompany or to join his or her spouse in a new locality, or (II) because of a marital, filial or other domestic obligation or circumstance, whether or not such work is in 'employment' as defined in this act: *Provided, however, That the provisions of this*

---

[1] Act of December 5, 1936, P.L. (1937) 2897, *as amended*, 43 P.S. §802.

*subsection (2) shall not be applicable if the employe during a substantial part of the six months either prior to such leaving or the time of filing either an application or claim for benefits was the sole or major support of his or her family,* and such work is not within a reasonable commuting distance from the new locality to which the employe has moved. (Emphasis added.)

The referee and the Unemployment Compensation Board of Review affirmed the Bureau's determination.

Claimant does not assert that Section 402(b) is the product of intentional discrimination, but rather, contends that since husbands outnumber wives as sole or major family wage earners by a ratio of four to one,[2] the statute has a discriminatory effect or impact, and that this alone is sufficient ground for invalidating the statute.

We have examined the cases cited by Claimant and find them inapposite. Those cases involve sex or racial discrimination *in employment.* Here, we deal not with employment, but with statutory entitlement to benefits contingent upon the loss of employment. Any inequality of treatment between men and women flows not from policies or practices of an employer, but from the structure of the legislation. Reference to the federal case law striking down discrimination

---

[2] Claimant argues that in 1972 only 21.1% of full-time working wives contributed 50% or more of their families' income and relies on Table A, "Marital and Family Characteristics of the Labor Force in March, 1973," U. S. Department of Labor. The Board counters by asserting that these are nationwide statistics which do not necessarily apply to Pennsylvania. Since we view these statistics as unpersuasive even if accurate for Pennsylvania, we need not address the Board's objection to this evidence and the untimeliness of its presentation.

in employment is misplaced in a case such as this which challenges the constitutionality of a state statute.

Acts of the legislature merit special dignity which does not attach to the actions of employers. An act of the General Assembly cannot be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. *Longwood Villa Nursing and Convalescent Home v. Insurance Department*, 26 Pa. Commonwealth Ct. 620, 364 A.2d 976 (1976); *Daly v. Hemphill*, 411 Pa. 263, 191 A.2d 835 (1963). Every presumption must be indulged in favor of the constitutionality of a statute and the burden is heavy upon the one who challenges it. *Hetherington v. McHale*, 10 Pa. Commonwealth Ct. 501, 311 A.2d 162 (1973). Claimant has not met that burden here.

A classification created by a state statute or regulation does not violate the Equal Protection Clause of the Federal Constitution if it bears a rational relationship to a legitimate state interest, or, when fundamental rights or a suspect class are involved, if it promotes a compelling state interest. *Fritsch v. Department of Public Welfare*, 19 Pa. Commonwealth Ct. 83, 338 A.2d 706 (1975); *Williams v. Civil Service Commission*, 7 Pa. Commonwealth Ct. 554, 300 A.2d 799 (1973).

The classification created by Section 402(b) is economic, not sexual. Claimant's statistical evidence itself reveals that on a national basis, the class of major family wage earners is not sexually exclusive, being one-fifth female and four-fifths male. While it is true that men greatly outnumber women in the favored class, numerical disparity is not alone sufficient to warrant our characterizing the classification as sex-based. In light of this determination, we need not consider whether sex is a suspect basis for classifica-

tion, requiring strict judicial scrutiny and the application of the compelling state interest test.[3]

There remains, therefore, only one question; namely, whether the classification bears a rational relationship to a legitimate state interest. To resolve this, we look to the purpose and history of the legislation.

The Unemployment Compensation Law is designed to relieve workers who beecome unemployed through no fault of their own of the hardship flowing from loss of employment. *Unemployment Compensation Board of Review v. Buss*, 26 Pa. Commonwealth Ct. 160, 362 A.2d 1113 (1976); *Unemployment Compensation Board of Review v. Department of Labor and Industry*, 203 Pa. Superior Ct. 336, 201 A.2d 310 (1964); *Charney v. Unemployment Compensation Board of Review*, 194 Pa. Superior Ct. 402, 168 A.2d 604 (1961). *See* Section 3 of the Law, 43 P.S. §752. Consistent with this philosophy, the legislature provided in Section 402(b) that persons who left their jobs voluntarily and without good cause were not eligible for the State's beneficence. The history of Section 402 indicates that the question of whether domestic necessity is sufficient to relieve a worker of the disqualifying effects of a voluntary termination has always been a close one, and the present amended statute is the result of the legislature's efforts over the years to conform the section as nearly possible to the remedial humanitarian purposes of the Law.[4] The different treatment

---

[3] Our determination that the classification is not based on sex also disposes of Claimant's argument with respect to the Pennsylvania Equal Rights Amendment.

[4] *See* Justice MUSMANNO's opinion in *Savage Unemployment Compensation Case*, 401 Pa. 501, 165 A.2d 374 (1960), for an exhaustive history of Section 402 up to the 1955 amendments; *see also Crumbling v. Unemployment Compensation Board of Review*, 14 Pa. Commonwealth Ct. 546, 322 A.2d 746 (1974), for a discussion of the effect of the 1959 amendments upon the prior law.

accorded major family wage earners and secondary family wage earners is justified by the fact that the family as a whole suffers relatively more severe economic disruption from the unemployment of the major wage earner than from the unemployment of the secondary wage earner. The fact that the legislature's action may result, in some cases, in compensation for the 51% breadwinner, but not for the one earning 49%, does not render its action irrational or unrelated to its legitimate interest of protecting the unemployed from financial hardship. The legislature does not violate the Constitution when it goes only part way in attempting to alleviate a pressing social problem; for "... the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. . . . It is enough that the State's action be rationally based and free from invidious discrimination." *Dandridge v. Williams*, 397 U.S. 471 at 486-87 (1970).

We hold that the distinction drawn by Section 402 (b) finds a rational basis in the underlying philosophy of the Unemployment Compensation Law, that the distinction involves no invidious discrimination, and that therefore the section passes muster under the Equal Protection Clause of the United States Constitution.

The instant case is distinguishable from *Boren v. California Department of Employment Development*, 59 Cal. App. 3d 250, 130 Cal. Rptr. 683 (1976), wherein the California Court of Appeal struck down, as violative of equal protection, a section of the state's unemployment insurance code which is nearly identical to our Section 402. There, the claimant's statistics showed that 99% of the applicants rejected under that section were women. From this, the Court concluded that the section affected women only and "was designed to disqualify a selected group of female claimants"; 59 Cal. App. 3d at 258, 130 Cal. Rptr. at 688.

The statistical evidence presented by Claimant does not enable us to draw the same conclusion reached by the California Court in *Boren*.

Accordingly, we

ORDER

AND Now, this 25th day of February, 1977, the decision of the Unemployment Compensation Board of Review is affirmed and the appeal therefrom is dismissed.