Alice Wallace, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued October 7, 1977, before Judges CRUMLISH, JR. and WILKINSON, JR., sitting as a panel of two. Reargued April 4, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DiSALLE.

*Harold I. Goodman,* for appellant.

*Susan Shinkman,* Assistant Attorney General, with her *Daniel R. Schuckers,* Assistant Attorney General, *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., October 31, 1978:

Unemployment compensation claimant Alice Wallace (Claimant) has appealed the decision of the Unemployment Compensation Board of Review (Board) affirming a referee's denial of benefits following her voluntary termination of her employment under Section 402(b) of the Unemployment Compensation Law (Law).[1] The case challenges the validity, under the Equal Protection and Due Process Clauses of the United States Constitution, of the blanket disqualification effected by Subsection (b)(2)(II) of Section 402, 43 P.S. §802, of all persons who quit their jobs for marital, filial or domestic reasons.

Claimant was employed as a nursing assistant at Misericordia Hospital in Philadelphia, working the middle shift, from 3:30 P.M. to 12 o'clock midnight. When her two older daughters moved away from home, she was faced with the need to provide care for her two sons, aged 11 and 14 years, during the evening. Unwilling to leave her job, she repeatedly requested a transfer to the day shift (7:30 A.M. to 3:30 P.M.) but no opening on that shift could be

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b).

found for her. Unable, after diligent search, to find someone to care for the children, she reluctantly resigned.

The unemployment compensation authorities' treatment of the case points up the very equal protection and due process problems lying at the heart of this appeal. The Bureau of Employment Security and the referee analyzed Claimant's application for benefits in terms of Section 402(b)(1) and, after considering the reasons for her resignation, found that those reasons did not constitute the "cause of a necessitous and compelling nature" which Section 402(b)(1) requires in order for an employee who voluntarily terminates his employment to be eligible for benefits. The Board, however, analyzed the case under Section 402(b)(2)(II), which disqualifies all persons who quit for domestic reasons *regardless* of good cause considerations and, again, denied benefits to her.[2]

Claimant's argument is two-pronged. First, she contends that by effectively preventing persons who quit their jobs for domestic reasons from showing that their resignations were motivated by necessitous and

---

[2] Section 402(b)(2) (II) states:

An employe shall be ineligible for compensation for any week—

. . . .

(2) In which his or her unemployment is due to leaving work (I) to accompany or to join his or her spouse in a new locality, or (II) because of a marital, filial or other domestic obligation or circumstance, whether or not such work is in 'employment' as defined in this act: Provided, however, That the provisions of this subsection (2) shall not be applicable if the employe during a substantial part of the six months either prior to such leaving or the time of filing either an application or claim for benefits was the sole or major support of his or her family, and such work is not within a reasonable commuting distance from the new locality to which the employe has moved.

compelling causes, whereas persons quitting their jobs for any other reason may so argue, the statute establishes a classification which bears no rational relationship to any legitimate state interest and hence violates the guarantee of equal protection. Second, relying on *Turner v. Department of Employment Security*, 423 U.S. 44 (1975), and *Cleveland Board of Education v. LaFleur*, 414 U.S. 632 (1972), she maintains that Section 402(b)(2)(II) creates an irrebutable presumption that a domestic quit can never be for a necessitous and compelling reason—a presumption which, she alleges, is not universally and necessarily true and which, therefore, is offensive to the Due Process Clause which disapproves such presumptions and mandates that they be drawn as narrowly as possible.

To support her argument that the presumption is not universally true, Claimant points to the opinions of the Superior and Supreme Courts during those periods when the Law did not contain the absolute disqualification of all domestic termination employees[3]— cases in which Judges, led by Judge RENO in his landmark decision in *Sturdevant Unemployment Compensation Case*, 158 Pa. Superior Ct. 548, 45 A.2d 898 (1946), held that domestic circumstances can rise to the level of necessitous and compelling cause for a worker's decision to terminate employment.

This Court has never ruled on the specific equal protection and due process arguments raised by this

---

[3] *See Hamilton Unemployment Compensation Case*, 172 Pa. Superior Ct. 413, 94 A.2d 63 (1953) ; *Mooney Unemployment Compensation Case*, 162 Pa. Superior Ct. 183, 56 A.2d 386 (1948). For a history of the domestic quit disqualification, *see* Justice MUSMANNO's opinion in *Savage Unemployment Compensation Case*, 401 Pa. 501, 165 A.2d 374 (1960), and our opinion in *Crumbling v. Unemployment Compensation Board of Review*, 14 Pa. Commonwealth Ct. 546, 322 A.2d 746 (1974).

appeal, although we have decided related issues in *Gilman v. Unemployment Compensation Board of Review*, 28 Pa. Commonwealth Ct. 630, 369 A.2d 895 (1977), and *Unemployment Compensation Board of Review v. Jenkins*, 23 Pa. Commonwealth Ct. 127, 350 A.2d 447 (1976). In *Gilman* we held that the classification in Section 402(b)(2)'s proviso, whereby principal wage earners would receive compensation but non-principal wage earners would not, bears a rational relationship to the legitimate goal of compensating the severest instances of economic disruption following unemployment. We did not reach the issue of whether an arbitrary system of discrimination resulted from the operation of Section 402(b)(2)(II) vis-a-vis Section 402(b)(1). In *Jenkins*, we rejected an equal protection challenge based upon the contention that Section 402(b)(2)(II) and Section 402(a) interacted so as to treat differently those who *leave* work for domestic reasons and those who *refuse an offer* to work for these reasons. The claimant there did not present, and we consequently did not consider, the possibility of the equal protection problem posed by the case at bar.

Our analysis begins with the axiomatic premise that there is a strong presumption in favor of the constitutionality of an act of the legislature and the burden lies heavily upon one challenging the act to show that it clearly, plainly and palpably violated the Constitution. This means that in the context of an economic benefits statute such as an unemployment compensation act, which does not involve a fundamental right, a classification established by the statute which, as here, is not inherently suspect will pass muster under the Equal Protection Clause if it bears *some* rational relationship to the legitimate purpose of the legislation. *Gilman v. Unemployment Compensation Board of Review, supra*, 28 Pa. Commonwealth Ct. at

634-635, 369 A.2d at 897. The same level of scrutiny is applied in the due process analysis so that where no fundamental right is involved, the presence of *some* rational justification in an Act's legislative purpose will suffice to protect a statutorily created conclusive presumption from effective constitutional attack. *Weinberger v. Salfi*, 422 U.S. 749 (1975).

We have studied the briefs of the parties and the cases decided at the various stages in the convoluted history of Section 402(b) and can perceive no rational basis whatsoever for the different treatment accorded domestic quit claimants. As we emphasized in *Gilman*, the purpose of the Unemployment Compensation Law is to relieve workers who become unemployed through no fault of their own of the hardship flowing from the loss of employment. We find no merit in the Board's contention that that purpose is served by disqualifying domestic quit claimants because their unemployment is not "sudden unemployment" and that it is only such sudden unemployment which the Law was intended to compensate.[4] First, nothing in logic or experience dictates that domestic causes for terminating employment arise any less suddenly, or with any less urgency, than the many other causes of voluntary termination which are afforded the benefit of good cause analysis under Section 402(b)(1), *e.g.*, harassment on the job, *Palmitessa Unemployment Compensation Case,* 197 Pa. Superior Ct. 618, 179 A. 2d 679 (1962); mental stress brought on by co-workers' actions, *Trinovitch Unemployment Compensation*

---

[4] The Board cites certain language in our opinion in *Jenkins v. Unemployment Compensation Board of Review, supra,* in support of this proposition. A close reading of *Jenkins* reveals that the language was not essential to the decision, which turned on the distinction between a termination of employment and a refusal of suitable employment, and was therefore dicta. We now specifically disapprove that language.

*Case,* 169 Pa. Superior Ct. 269, 82 A.2d 277 (1951); dangerous working conditions, *Myers Unemployment Compensation Case,* 164 Pa. Superior Ct. 150, 63 A.2d 371 (1949); discrimination, *Woodson v. Unemployment Compensation Board of Review,* 461 Pa. 439, 336 A.2d 867 (1975); health reasons, *Southerland Unemployment Compensation Case,* 202 Pa. Superior Ct. 149, 195 A.2d 138 (1963); or illegal recording of telephone calls, *Zinman v. Unemployment Compensation Board of Review,* 8 Pa. Commonwealth Ct. 649, 305 A. 2d 380 (1973).

Even should the suddenness of the cause of termination, or the absence thereof, be a valid consideration in deciding whether to grant or deny benefits, that factor can and should be considered with all the other attending circumstances under the necessitous and compelling cause criterion of Section 402(b)(1).

We likewise reject the Board's argument—offered without any supporting authority or extended discussion—that claims of necessity based on domestic circumstance are more easily fabricated and that therefore blanket denial of these claims is rationally justified by the goal of preventing fraud. We are not persuaded that, in a system which places the burden of proving all the elements of entitlement to benefits upon the claimant and which places in the Commonwealth's referees the authority to determine the claimant's veracity and the weight of the evidence, the opportunities for falsification are any greater in the case of a domestic quit claimant than they are where a claimant quits because of, for example, alleged harassment, *Palmitessa Unemployment Compensation Case, supra;* mental stress, *Trinovitch Unemployment Compensation Case, supra;* or health reasons, *Southerland Unemployment Compensation Case, supra.*

In the absence of any rational relationship between the total disqualification of domestic quit claimants

and some legitimate legislative purpose, the singling out of this group of claimants for separate treatment for no other apparent reason than that it is convenient to do so or that it will conserve the unemployment compensation fund is precisely the kind of patently arbitrary treatment which violates the constitutional mandate of equal protections of the laws, *Flemming v. Nestor,* 363 U.S. 603 (1960).

The possibility that some domestic quit claimants would be determined ineligible for benefits because the circumstances of their quitting, taken as a whole, are not found to be necessitous and compelling is not a rational basis for disqualifying all applicants, given the Law's remedial humanitarian purposes. The denial to domestic quit claimants of the opportunity to show necessitous and compelling cause for termination is especially objectionable in light of the fact that the administrative mechanism for making such showings, *viz,* the hearings before the referee on the circumstances of the quit, already exists and is utilized in a great number of non-domestic related voluntary quit cases. Even where the cause of unemployment is clearly domestic in nature, other perceptible issues in the case often require a referee to take detailed testimony from the claimant relative to the circumstances of his leaving work to determine, for example, the often close question of whether the claimant quit or was fired or laid off and then offered another position by his employer, which the claimant refused because he considered it unsuitable. *See, e.g., Spotts Unemployment Compensation Case,* 176 Pa. Superior Ct. 484, 109 A.2d 212 (1954). Therefore, requiring domestic quit claims to proceed under Section 402 (b)(1) would rarely result in the holding of additional hearings or even a substantial increase in the length of hearings, but would merely enlarge the scope of the referee's and the Board's analysis. Such addi-

tional analysis would impose no significant burden on the unemployment compensation appeal system. The referee and Board presently apply the necessitous and compelling cause standard to a host of voluntary termination cases; they applied it to domestic quit cases during the years when Section 402(b)(2)(II)'s blanket ineligibility provision was not part of the Law, and the referee even applied it in this case, apparently considering it as easy a task to rule under one section as under the other. The need for individualized determinations of claimants' entitlement to benefits, thereby fulfilling the purpose of the Law, so clearly outweighs the slight administrative convenience of treating an entire category of claimants under a conclusive presumption that to deny them individualized treatment is to deny them the due process of law guaranteed by the Constitution.

Because the absolute disqualification by Section 402(b)(2)(II) of all unemployment compensation claimants who voluntarily terminate their employment for marital, filial or domestic reasons bears no rational relationship to a legitimate legislative purpose, it violates the Equal Protection Clause of the United States Constitution; because it denies such claimants individualized determinations of their entitlement to a significant property right when the administrative inconvenience of providing such determinations is negligible, it violates the Due Process Clause. Accordingly, the section's disqualification may not be utilized by the unemployment compensation authorities in determining eligibility. The eligibility for unemployment compensation of applicants who terminate their employment for marital, filial or domestic reasons must be determined under Section 402(b)(1); that is, each claimant must be afforded the opportunity to demonstrate that his termination was for a necessitous and compelling nature.

Accordingly, we

## ORDER

AND Now, this 31st day of October, 1978, the decision of the Unemployment Compensation Board of Review denying benefits to Alice Wallace is reversed. The case is remanded to the Board for a redetermination of eligibility under Section 402(b)(1) of the Unemployment Compensation Law.

Judge DiSALLE concurs in the result only.

---

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

I respectfully dissent. I agree with the majority that the constitutionality of the provisions of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §751 et seq., disqualifying unemployed persons from benefits are subject to the rational relationship test and that they are not inherently suspect because one's entitlement to benefits is not a fundamental right. I disagree with the majority in its conclusion that Section 402(b)(2)(II) is unconstitutional (as apparently is Section 402(b)(2) in its entirety) because of the faulty premise on which it appears such a conclusion is based.

As I understand the majority opinion, it assumes that Section 402(b)(1) and Section 402(b)(2) are inseparable and but one disqualifying provision.[1] However, I view them as separate and totally unrelated. Section 402(b)(1) directs itself to *voluntary* termination of employment and disqualifies a person from benefits unless the voluntary quit is for a *job related*

---

[1] To the extent that *Sturdevant Unemployment Compensation Case*, 158 Pa. Superior Ct. 548, 45 A.2d 898 (1946), decided under prior and different statutory law might suggest a contrary conclusion under present statutory law, I would disapprove it.

cause of a necessitous and compelling nature. Section 402(b)(2) disqualifications are *non-job related* and without regard to the voluntary or involuntary nature of employment termination. These provisions deny benefits to those whose unemployment is due to leaving work for domestic or filial reasons.

On the record before us, it is as self-evident to me—as the contrary result appears to be self-evident to the majority—that there is a rational state interest in denying benefits to persons who become unemployed for non-job related reasons as distinguished from those whose employment is terminated for job related reasons. Where the legislature has set forth a scheme for providing economic benefits to the unemployed, absent the assertion of a fundamental personal right, the courts defer to the legislative discretion. *Idaho Department of Employment v. Smith,* 98 S. Ct. 327, 54 L.Ed.2d 324 (1977). Nor should the confusion and apparent administrative inconsistency evident in this case with respect to determination of petitioner's eligibility influence the result as to the constitutionality of Section 402(b)(2). Consistent with our prior holdings in *Gilman v. Unemployment Compensation Board of Review,* 28 Pa. Commonwealth Ct. 630, 369 A.2d 895 (1977) and *Unemployment Compensation Board of Review v. Jenkins,* 23 Pa. Commonwealth Ct. 127, 350 A.2d 447 (1976), declaring this section constitutional, I would affirm the Board.

Judge WILKINSON, JR. joins in this dissent.

---

DISSENTING OPINION BY JUDGE ROGERS:

This Court having so recently unanimously upheld the Statute here in question in *Unemployment Compensation Board of Review v. Jenkins,* 23 Pa. Commonwealth Ct. 127, 350 A.2d 447 (1976), and there being no attack on the Statute advanced here different

from that made in *Jenkins*, one would think that *Jenkins* would be overturned only by a later contrary declaration of law by some higher authority. Not only has the majority referred to no such declaration, it entirely overlooks the reason why the disqualification of persons who quit their work for domestic reasons passes constitutional muster carefully explained in *Jenkins*—that the purpose of unemployment compensation is to provide temporary assistance to persons who are suddenly without employment for causes over which they have little or no personal control.

Further, while it is agreed that the State may not confer benefits on some people and deny them to others without reason, it seems to me that the added cost of providing benefits to persons who leave work for domestic reasons is a reason for denying them benefits, and a very good one indeed. The payment of benefits to spouses who follow their partners to new places of employment or to working parents who believe that one of them should devote all of his or her time to the children or to persons with one or more of a myriad of other domestic reasons for quitting employment which could be conjured, could place an unimaginable burden on the program.

Also, there is nothing in the record of this case showing that the claims of persons leaving work for domestic reasons, if such persons were eligible, would not overburden the fund, nor indeed is there any evidence on the subject. The burden of showing no rational relationship of the Statute to any legitimate State interest was on the claimant. Certainly this Court cannot assume that this greatly expanded allowance would have no effect.

Finally, the history of unemployment compensation in Pennsylvania is one of increasingly larger benefits conferred on more and more people. This history, together with the exception made for domes-

tic causes for quitting, convince me that the Legislature is aware both of the needs of the unemployed and of the problems of funding the program. We should not interfere with the Legislature's policy in this case on this record.

I dissent.