420 A.2d 391

**Velma RICHARDS, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.**

Supreme Court of Pennsylvania.

Argued March 4, 1980.

Decided Sept. 22, 1980.

Richard D. Gordon, William C. Knapp, Neighborhood Legal Services, McKeesport, for appellant.

Richard Wagner, Chief Counsel, Bd. of Review, Dept. of Labor and Industry, Michael D. Klein, Harrisburg, for appellee.

Before EAGEN, C.J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

Appellant, Velma Richards, was denied unemployment compensation benefits by the Unemployment Compensation Board of Review ("Board"). The Commonwealth Court affirmed, *en banc*, with three judges dissenting. *Richards v. Unemployment Compensation Board of Review*, 42 Pa. Cmwlth. 425, 400 A.2d 1345 (1975). We granted allocatur and now reverse and remand for computation of benefits.

The facts are not in dispute. In January, 1976, appellant earned sixty-eight dollars a week as a bus driver for the Quaker Valley School District ("Quaker"), where she had been employed for over six years. Her husband, employed by the Barberry Horse Farm ("Barberry") earned approximately $500 a month. In addition, Barberry provided free use of a house in nearby Sewickley, Pennsylvania, with a rental value of one hundred fifty to two hundred dollars a month.[1]

Mr. Richards was fired in January, 1976, and the family was forced to vacate the Barberry house. A relative immediately made available another rent–free house in Large, Pennsylvania, approximately forty–five miles away. Appellant testified without contradiction that the sudden loss of her husband's salary and the Barberry house forced the family to move to Large. Appellant further testified that because she was unable to commute ninety miles a day, she was forced to terminate her employment with Quaker.

Appellant was unable to find employment in the Large area until May, 1976, when LKB Transportation Company ("LKB") employed her as a bus driver for five days and then laid her off for lack of work.[2] Appellant promptly applied to the McKeesport Bureau of Employment Security ("Bureau") for unemployment compensation. Her application was denied in August, 1976, because the Bureau concluded that (1) since appellant had voluntarily terminated her employment with Quaker to join her spouse, she was not eligible for benefits under § 802(b)(2)(I) of the Unemployment Compensation Act ("Act"),[3] and (2) her earnings at

---

1. Utilities were also supplied at no charge. The record contains no estimate of their value.

2. Mr. Richards was also unable to find work in Large, and collected sixty–two dollars a week in unemployment compensation benefits.

3. Act of December 17, 1959, *s amended*, 43 P.S. § 802(b)(2)(I), which provides in relevant part:
   An employe shall be ineligible for compensation for any week . . . in which his or her unemployment is due to leaving work . . . to accompany or join his or her spouse in a locality . . . .
   The legislature recently has repealed this provision of the Act. *See* Act 108 of 1980, House Bill 1673.

LKB were insufficient to qualify appellant for compensation under Section 801(f) of the Act.[4] She appealed to a designated referee of the Board, and after a hearing at which appellant was not represented by counsel, the referee found (1) that appellant moved to Large because she could not afford to live in Sewickley, and (2) that appellant left Quaker's employ because she could not commute ninety miles a day. The referee affirmed the Bureau, however, ruling that appellant had not demonstrated her eligibility under §§ 801(f) and 802(b)(2)(I).

Appellant then obtained counsel and appealed to the Board, which, after briefing and argument, adopted verbatim the referee's findings of fact and conclusions of law and affirmed his decision.

On appeal to the Commonwealth Court, the matter was listed before a three judge panel, but referred to the Court *en banc* following oral argument. After reargument, the Board's decision was affirmed. *Richards v. Unemployment Compensation Board of Review, supra.* We granted allocatur on October 2, 1979.

■ Appellant argues that the evidence presented at the hearing below established her eligibility for compensation because it showed that she left Quaker for necessitous and compelling reasons.[5] We agree.[6]

---

4. Act of July 6, 1977, *as amended*, P.L. 41, No. 22, § 3, 43 P.S. § 801(f), which provides in relevant part:

    Compensation shall be payable to any employe who ... [h]as earned, subsequent to his separation from work ... remuneration for services in an amount equal to or in excess of six (6) times his weekly benefit rate ....

5. Appellant here concedes that she was ineligible for benefits under § 801(f).

6. Appellant also contends that § 802(b)(2)(I) is unconstitutional because it violates the equal protection and due process guarantees of the federal and state constitutions. Because we find for appellant on other grounds, we need not reach the constitutionality question. *Lattanzio v. Unemployment Compensation Board of Review*, 461 Pa. 392, 395, 336 A.2d 595, 597 (1975) ("[W]e will not reach constitutional issues where the matter can be decided on non–constitutional grounds.") *See Commonwealth v. Allsup*, 481 Pa. 313, 392 A.2d

Although our scope of review is limited in evaluating Board rulings, "ultimate conclusions" are always subject to appellate scrutiny:

"[I]f supported by substantial evidence in the record as a whole, the Board's findings of fact are conclusive upon appeal. The legal conclusions drawn by the Board from its findings of fact, however, remain subject to judicial review. *See Hambridge Steel Erectors, Inc. v. Unemployment Compensation Board of Review*, 211 Pa.Super. 425, 428, 235 A.2d 432, 433 (1967).

Whether one had "cause of a necessitous and compelling nature" is an ultimate conclusion which must be drawn from the underlying findings of fact. Such ultimate conclusions–sometimes called "ultimate facts"–are legal conclusions and are always subject to appellate review. *Felmlee v. Lockett*, 466 Pa. 1, 351 A.2d 273 (1976); *In re Estate of Thomas*, 463 Pa. 284, 344 A.2d 834 (1975); *In re Estate of McKinley*, 461 Pa. 731, 337 A.2d 851 (1975); *Van Products Co. v. Gen. Weld. & Fab. Co.*, 419 Pa. 248, 213 A.2d 769 (1965).

*Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 359, 378 A.2d 829, 832 (1977). A determination that an employee voluntarily left work to join his or her spouse, as described by § 802(b)(2)(I), is an "ultimate conclusion" subject to appellate review. *See Sturdevant Unemployment Compensation Case*, 158 Pa.Super. 548, 45 A.2d 898 (1946). Further, a determination of what must be shown under § 802(b)(2)(I) to qualify for benefits involves statutory interpretation, which is a basic function of this Court. *See, e. g., Hellertown Mfg. Co. v. Commonwealth*, 480 Pa. 358, 390 A.2d 732 (1978). Plainly, then, the Board's decision that appellant "voluntarily" left Quaker to join her spouse in Large is reviewable by this Court.

1309 (1978); *Mt. Lebanon v. County Board of Elections*, 470 Pa. 317, 368 A.2d 648 (1977). *See also Ashwander v. T.V.A.*, 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–483, 80 L.Ed. 688 (1936) (Brandeis, J. concurring.) *But see Wallace v. Unemployment Compensation Board of Review*, 38 Pa.Cmwlth. 342, 393 A.2d 43 (1978), *allocatur granted; Gilman v. Unemployment Compensation Board of Review*, 28 Pa.Cmwlth. 630, 369 A.2d 895 (1977).

■ Both the Board and the Commonwealth Court construed § 802(b)(2)(I) to dictate appellant's ineligibility for benefits because the desire to join her spouse might have been *one* reason for terminating her employment with Quaker. Such a reading of the Act is entirely too restrictive. We have held repeatedly that the Act should be interpreted liberally:

"Finally, it is to be remembered that the Unemployment Compensation Law is a remedial statute, and, excepting the section imposing taxes, its provisions must be liberally and broadly construed so that its objectives [insuring that employees who become unemployed through no fault of their own are provided with some semblance of economic security] may be completely achieved." *Blum Unemployment Compensation Case*, 163 Pa.Super. 271, 278, 60 A.2d 568, 571 (1948).

*Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 85, 351 A.2d 631, 633 (1976); *Lattanzio v. Unemployment Compensation Board of Review, supra; Wedner v. Unemployment Compensation Board of Review*, 449 Pa. 460, 296 A.2d 792 (1972). *See* Statutory Construction Act of December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1928(c). We have also stated that "the test [for determining eligibility for benefits] is not whether the claimant has taken himself out of the scope of the Act, but whether the Act specifically excludes him from its provisions. That is what is meant by a liberal and broad construction." *Pittsburgh Pipe and Coupling Company v. Unemployment Compensation Board of Review*, 401 Pa. 501, 509, 165 A.2d 374, 378 (1960). The Commonwealth Court and the Board have strayed from this policy in requiring appellant to prove that a factor (the desire to join her spouse) did not contribute in any way to her decision to re–locate. Such a requirement ignores the complexity of human action, which is frequently the product of *many* different factors, and places an impossible burden of proof on those who seek unemployment compensation. We conclude that § 802(b)(2)(I) mandates a finding of eligibility

once an applicant has demonstrated that the desire to join his or her spouse was not *the predominant reason* for his or her termination of employment. Such a reading of the statute comports with the longstanding goal of the Legislature and this Court to aid those individuals who, through no fault of their own, face the grim prospect of unemployment.[7]

■ The instant record demonstrates that appellant has proven that her re–location to Large was compelled by economic necessity. In January, 1976, the firing of her husband cut off the great bulk of the family's income and resulted in eviction from a rent–free home. The couple's only viable option was to move to Large, where they at least were assured shelter. Although the desire to join her husband might have contributed to appellant's decision to re–locate, she has demonstrated that it was not the predominant reason. Rather, her uncontradicted testimony below, credited by the referee and the Board, established that the move was compelled by economic necessity.[8] Similarly credited was appellant's uncontradicted testimony that she left Quaker because she was unable to commute the ninety miles a day to and from Sewickley.

In light of this evidence, we conclude that appellant has met her burden of proof under § 802(b)(2)(I). Accordingly, the order of the Commonwealth Court is reversed and the

7. *Deiss v. Unemployment Compensation Board of Review*, 475 Pa. 547, 381 A.2d 132 (1977); *Woodson v. Unemployment Compensation Board of Review*, 461 Pa. 439, 336 A.2d 867 (1975); *Lybarger Unemployment Compensation Case*, 418 Pa. 471, 211 A.2d 463 (1965); *Smith v. Unemployment Compensation Board of Review*, 396 Pa. 557, 154 A.2d 492 (1959); *Loerlein Unemployment Compensation Case*, 359 Pa. 535, 59 A.2d 913 (1948).

8. The Board argues that the Richards' would have saved money had they remained in Sewickley and rented housing equivalent to the Barberry residence. Thus, the Board contends that appellant moved not for reasons of economy, but solely to join her husband. There is nothing in the record to show that *appellant* would have fared better financially had she remained alone in Sewickley. To the contrary, the record shows that had she taken such action, she would have had to support herself totally on her weekly salary of sixty–eight dollars. Although she lost this salary by moving to Large, she shared in her husband's near equivalent unemployment benefits—sixty–two dollars a week—and was afforded free shelter.

matter is remanded to the Board for computation of benefits. *See Deiss v. Unemployment Compensation Board of Review, supra*, 475 Pa. at 556, 381 A.2d at 136.

FLAHERTY, J., filed a Dissenting Opinion.

FLAHERTY, Justice, dissenting.

I dissent. The opinion of Mr. Justice Kauffman, by extending unemployment benefits to the appellant spouse, stretches unemployment compensation coverage too far while completely derogating expressed legislative intent. The opinion properly notes that the Unemployment Compensation Act is to be liberally construed in furtherance of a policy of benefiting persons unemployed through no fault of their own, but fails to heed the Act's specific exclusion of benefits for relocated spouses:

"§ 802. Ineligibility for compensation

An employe shall be ineligible for compensation for any week—

. . . . .

(b)(2) In which his or her unemployment is due to leaving work (I) to accompany or to join his or her spouse in a new locality . . . ."[1]

Under this clear language, the inquiry should not be that set forth in the opinion of Mr. Justice Kauffman requiring a determination of whether the desire to join a spouse predominated over economic necessity as the cause of leaving employment. Appellant left employment to join her spouse in a new locality, and this fact, alone, negates benefit eligibility under the plain language of the statute.

Spouses who resign employment to keep a marriage intact may have no realistic alternative, but the legislature has unambiguously expressed its intent to exclude coverage for such spouses. The legislature may rationally have determined that relocated spouses would almost universally attempt to cloak their voluntary departures from employment

1. Act of December 17, 1959, *as amended*, 43 P.S. § 802(b)(2)(I) (Supp.1980).

as economic necessities, and that the exclusion is necessary to avoid the cost, difficulty, and imprecision of individual determinations of necessity, while protecting the fiscal integrity of the fund.