Duane K. Ritter, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs February 3, 1983, to President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Joseph R. DeCristopher,* for petitioner.

*John T. Kupchinsky,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., April 25, 1983:

The Unemployment Compensation Board of Review affirmed a referee who denied benefits to Duane K. Ritter (Ritter). We affirm.

Ritter embarked, with his fifteen-year old son, on a trip to Texas to find what he called a "good job." After one week's work as a gas pumper,[1] he quit and returned to Pennsylvania. He was dissatisfied with the pay and living conditions.[2]

The Board concluded that Ritter had "voluntarily quit" and was not entitled to benefits under Section 402(b).[3] Ritter contends that he had cause of a necessitous and compelling nature for his quit. The claimant bears the burden to prove such an assertion. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977). Ritter not having prevailed below, our scope of review is limited to determining whether there was a capricious disregard of competent evidence or an error of law in the holding. *Michelcavage v. Unemployment Compensation Board of Review,* 60 Pa. Commonwealth Ct. 424, 431 A.2d 1153 (1981). We find no capricious disregard of competent evidence, and the Board's legal conclusion is consistent with this Court's previous holdings that discontentment with wages, hours and working conditions is not an adequate cause for terminating one's employment so as to justify an award of unemployment com-

---

[1] Ritter arrived in Rockwell, Texas, where he stopped and took the first job available to him as a gas pump attendant for Rockwell 76 Auto Plaza.

[2] Ritter was being paid at the rate of $3.45 per hour. Having just arrived in Texas, and having brought inadequate funds, he lived with his son in their car for the one-week period.

[3] Section 402(b) reads, in pertinent part, as follows:

An employe shall be ineligible for compensation for any week—

. . . .

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . .

Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b).

pensation benefits. *See, e.g., Martelli v. Unemployment Compensation Board of Review,* 62 Pa. Commonwealth Ct. 137, 435 A.2d 303 (1981).

Affirmed.

### ORDER

The Unemployment Compensation Board of Review decision, No. B-196871 dated July 7, 1981, is hereby affirmed.

––––––––

DISSENTING OPINION BY JUDGE DOYLE:

I must respectfully dissent. In the proceeding before the referee, Ritter testified, in essence: That prior to going to Texas he was collecting unemployment benefits from a layoff as a truck driver which commenced on December 19, 1980. He also was receiving an income supplement of $100 a month and a place to live at a poultry farm. From these sources, he provided for the support of his fifteen year old son from a prior marriage and his second wife. On or about February 6, 1981, Ritter completed a ten week phase of his responsibility in the business of the poultry farm. As he was otherwise unemployed, and had no further responsibilities to the poultry farm for four to six weeks, Ritter decided to use the time to look for a better job for himself.

On February 6, Ritter and his son left Milton, Pennsylvania and drove to Texas where he stopped and took the first job available to him because he needed cash to continue. From his wages, $3.45 an hour, Ritter had to feed himself and also sustain his wife who had stayed in Pennsylvania. He subsequently found that he could not afford to sustain himself and his son, let alone his wife because meals at restaurants cost $30 a day; housing was unexpectedly expensive, with Ritter's search discovering that monthly rent for a two bedroom apartment would require $350.00 plus

a security deposit. He was thus unable to establish a residence in Texas or afford to have his wife join him. Nor was his living situation acceptable, as he and his son were sleeping in his car without access to a shower, working at night and trying to sleep during the day.

Ritter did, however, make efforts to secure an acceptable wage. He sought employment, without success, by applying to the Homart Corporation, Williams Concrete and Bodin, all employers in Rockwell, Texas. He also inquired into the possibility of enrolling his son in school in Texas. Unfortunately, on the basis of the inadequacy of his wage in relation to his daily expenses, the inadequacy of his living situation and his inability to support himself, his wife, and his son, Ritter was compelled to return to Pennsylvania with his son.

I therefore believe Ritter in his claim clearly raised the issue of economic *survival,* an issue ignored by the Board in its conclusion that he terminated his employment because he was dissatisfied with his wages. Under the circumstances testified to by Ritter, the question of one's ability literally to survive transcends the concept of mere dissatisfaction with wages. Whereas economic necessity has been recognized as a necessitous and compelling reason for voluntarily terminating employment, *Richards v. Unemployment Compensation Board of Review,* 491 Pa. 162, 420 A.2d 391 (1980) ; *Wheeler v. Unemployment Compensation Board of Review,* 69 Pa. Commonwealth Ct. 201, 450 A.2d 775 (1982), I would direct that this matter be remanded to the Board for the necessary findings as to this issue. I also believe that to deny benefits to an individual who has made a good faith effort to remove himself from the roles of the unemployed, but then found his situation to be untenable, regardless of how poorly planned the effort may have been, would operate as a distinct disincentive to those who might otherwise be

inclined to take similar risks in the hopes of obtaining gainful employment, thereby helping to perpetuate the overburdened state of our unemployment compensation system.