Bennie G. CHANDLER, Plaintiff,

v.

DEPARTMENT OF EMPLOYMENT SECURITY and First Security Bank, Defendants.

Mary A. MITCHELL, Plaintiff,

v.

DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.

Rita M. NAGLE, Plaintiff,

v.

DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.

Cynthia S. SANDERSON, Plaintiff,

v.

DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.

Patricia N. YORK, Plaintiff,

v.

DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.

Patricia P. KALLER, Plaintiff,

v.

DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.

Nos. 18597, 18721, 18478, 18608, 18758 and 19207.

Supreme Court of Utah.

Feb. 17, 1984.

---

10. 231 F.Supp. 72 (S.D.N.Y.1964).

11. *Id.* at 94.

12. *Id.*

13. *Supra* n. 2, at 194.

David L. Wilkinson, Atty. Gen., Floyd G. Austin, K. Allan Zabel, Sp. Asst. Attys. Gen., Salt Lake City, for defendants.

Bennie G. Chandler, pro se.

Mary A. Mitchell, pro se.

Rita M. Nagle, pro se.

Cynthia S. Sanderson, pro se.

Elliott Levine, Salt Lake City, for Patricia N. York.

Louisa L. Baker, Utah Legal Service, Salt Lake City, for Patricia P. Kaller.

DURHAM, Justice:

I

We consider here the appeals of six claimants for unemployment compensation who were denied benefits by the Industrial Commission. All six claimants are women who were found to have left their jobs in order to follow their spouses to a new location. Section 35–4–5(a) of the Utah Code Annotated (1983 Pocket Supp.) states in part:

An individual is ineligible for benefits ...
(a) For the week in which the claimant left work voluntarily without good cause

... provided, that no claimant shall be ineligible for benefits if the claimant leaves work under circumstances of such a nature that it would be contrary to equity and good conscience to impose a disqualification....

Notwithstanding any other provision of this section, a claimant who has left work voluntarily to accompany, follow or join his or her spouse to or in a new locality does so without good cause for purposes of this subsection.

Amended 1983 (1st S.S.) Utah Laws ch. 20, § 3. The claimants raise questions regarding the constitutionality of the second paragraph quoted above, which became effective February 7, 1982. The claimants allege violations of due process and equal protection. The entire Court rejects those arguments and holds that the statute is constitutional, as set forth in Part II of this opinion. Justice Oaks writes separately for the majority of the Court in affirming the application of the statute to all six of these claimants by the Industrial Commission. I dissent from that holding as regards four of these claimants and explain my dissent in Part III below.

## II

The Legislature has set the standard of review for unemployment compensation cases. The scope of this Court's jurisdiction when reviewing such cases is found in U.C.A., 1953, § 35-4-10(i) (1983 Pocket Supp.), which provides that "[i]n any judicial proceeding under this section, the findings of the commission and the board of review as to the facts *if supported by evidence,* shall be conclusive and the jurisdiction of the court shall be confined to questions of law." (Emphasis added.)

■ The claimants first raise questions of constitutional law. There is a strong presumption in favor of the constitutionality of legislative enactments. In *Baker v. Matheson,* Utah, 607 P.2d 233 (1979), this Court stated:

In determining the constitutionality of an enactment that is primarily economic in nature, a presumption of constitutionali-

ty is extended to that enactment; and we will not strike it down unless the party attacking it clearly establishes that a constitutional provision has been violated.

*Id.* at 236 (citations omitted). The claimants argue that the newly enacted portion of the statute creates an irrebuttable presumption prohibited by the due process and equal protection clauses of the United States Constitution. The claimants refer to *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), for the proposition that irrebuttable presumptions are particularly offensive to the due process clause when the "presumption is not necessarily or universally true in fact." *Id.* at 452, 93 S.Ct. at 2236. The "irrebuttable presumption" analysis, however, has been rejected by the Supreme Court as an acceptable approach in scrutinizing legislative classification in matters of social welfare. After analyzing the *Vlandis* line of cases, in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), a case dealing with a social security classification, the Supreme Court concluded:

We hold that these cases are not controlling on the issue before us now.... [A] noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status, *Dandridge v. Williams* [397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)], though of course Congress may not invidiously discriminate among such claimants on the basis of a "bare congressional desire to harm a politically unpopular group," or on the basis of criteria which bear no rational relation to a legitimate legislative goal.

*Id.* at 771–72, 95 S.Ct. at 2469–70 (citations omitted). In *Baker v. Matheson, supra,* this Court noted that "Utah law in essential respects is in accord with federal law." 607 P.2d at 244.

For the Legislature to devise effective means for dealing with social and economic problems which affect people and groups differently, it must frequently be able to rely on approximations in decid-

ing which groups fall within and which are without the scope of legislation....

....

... The standard which governs whether the classifications are rational, is whether facts can reasonably be conceived which would justify the distinctions or differences in state policy as between different persons, *Lindsley v. National Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911)....

*Id.* The purpose of unemployment compensation is "to ameliorate the hardship of those who, through no fault of their own, find themselves unemployed." *Daniel v. Industrial Commission of Utah*, Utah, 617 P.2d 381, 387 (1980). In amending § 35-4-5 to exclude from unemployment benefits those who voluntarily leave work to follow or join a spouse, the Legislature has attempted to delineate a group of person who do not fit within the category of those who find themselves unemployed through no fault of their own. We must examine this classification to see "whether facts can reasonably be conceived which would justify the distinctions or differences in state policy as between" those who voluntarily leave work to follow a spouse and those who voluntarily leave work for other reasons. 607 P.2d at 244. In *Child v. Board of Review of Industrial Commission*, Utah, 657 P.2d 1375 (1983), this Court reviewed such a set of facts. In that case the Court affirmed the denial of benefits when the claimant quit her job in Utah in order to join her husband who was attending law school in California.

We reject claimant's premise that in order to preserve her marriage she had no choice except to accompany her hus-

band. Quitting work so that a spouse may attend school involves a personal lifestyle consideration rather than an external pressure.

*Id.* at 1377. It is reasonable for the Legislature to determine, as a matter of policy, that the state need not underwrite the financial risks attendant on such a personal and voluntary choice as the decision to attend school in another state. Therefore we hold that this classification, established to deny benefits to those who voluntarily leave work to follow or join a spouse, bears a rational relationship to the legitimate legislative goal of limiting unemployment compensation to those who become unemployed through no fault of their own. Thus, in spite of its unfortunate effects on many families,[1] the classification offends neither the state nor the federal constitution. The holding of the Court is that U.C.A., 1953, § 35-4-5(a) is constitutional.

### III

I dissent from the majority holding set forth by Justice Oaks, as to four of the claimants herein. By its plain language, the statute before us requires that (a) the claimant must *voluntarily* leave work and that (b) the reason for the claimant's leaving work be "to follow or join a spouse in a new locality." These requirements have been misconstrued in these cases. Without exception, the initial eligibility form and/or the findings of the appeals referee for each claimant state that *because* the claimant left work to follow her spouse, the claimant left work "voluntarily without good cause." In other words, the statute has been inter-

---

1. These unfortunate effects have caused the greatest indignation among the claimants, who cannot understand why the Legislature should penalize them for keeping their families together. The Board of Review of the Industrial Commission also expressed its concern that the provision "may fall heavily on female members of the labor force. For that reason there is a question, in the opinion of the Board, as to the constitutionality of this provision." Decision of the Board of Review, *Chandler v. Department of Employment Security*, June 22, 1982. However, as we have noted, discrimination in social welfare matters is not unconstitutional unless it is invidious discrimination. *See generally Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). As long as the statute is not unconstitutional, it is not the business of this Court to question the equity of the Legislature's classification. *See Baker v. Matheson*, 607 P.2d at 237. Furthermore, none of the claimants here offer any evidence of disporportionate impact that would establish even a prima facie case of gender discrimination.

preted as if it said "a claimant who has left work to accompany, follow or join his or her spouse ... does so *voluntarily* without good cause." To the contrary, the word "voluntarily" modifies the word "left" in the statute. Thus, the statute itself requires evidence that the claimant (a) *voluntarily* left work (b) in order to follow or join a spouse in a new locality, before benefits may be denied under the amended portion of § 35-4-5(a).

Other states have enacted statutes that specifically disqualify from benefits those claimants who leave work in order to follow a spouse to a new locality. The statutes vary widely in detail and application but, with a single exception, have been upheld as valid by the state courts. *See* 21 A.L.R. 4th 317 (1983). New York is a state that, like Utah, has a statute which provides for disqualification from benefits when a claimant leaves work *voluntarily* to follow a spouse. The New York Unemployment Insurance Appeal Board makes a factual determination of whether the claimant's job separation was voluntary or whether there was a "compelling necessity for the claimant's physical presence in another locality," such as a physical disability in either the claimant or the claimant's spouse. *Ost v. Catherwood*, 26 A.D.2d 979, 274 N.Y.S.2d 691, 692 (1966). In *Richards v. Unemployment Compensation Board of Review*, 491 Pa. 162, 420 A.2d 391 (1980), the Pennsylvania Supreme Court considered whether a claimant had left work to follow her spouse to a new locality or whether she had some other compelling reason for separation. The court determined that the Board had read the statute too narrowly, and that although a desire to join her spouse may have been one factor in motivating her decision to relocate, the record showed that her resignation and relocation were "compelled by economic necessity," including the inability of the two spouses to support separate households. *Id.* 420 A.2d at 395.

In applying the Utah statute to the claimants in the instant cases, we should construe the word "voluntarily." Section 35–4–5(a) makes it clear that a termination of employment initiated by the employee rather than the employer—does not necessarily make a claimant ineligible for benefits. The standard is whether the claimant left work "voluntarily without good cause." The General Rules of Adjudication of the Utah Department of Employment Security at Voluntary Leaving, § 210, states:

> "Good cause" as used in unemployment insurance is cause which would justify an employee's voluntarily leaving work and becoming unemployed .... To constitute good cause, the circumstances which compel the decision to leave must be real, not imaginary; substantial, not trifling; and reasonable, not whimsical. *There must be some compulsion from outside and necessitous circumstances.*

Quoted in *Child v. Board*, 657 P.2d at 1376 (emphasis in original).

It would not be appropriate under the statute to exclude from benefits persons who leave employment with good cause (including injury, illness, economic necessity and job harassment) and end up, coincidentally, with a spouse in a new locality, even though the *reason* for leaving is not "to accompany, follow, or join his or her spouse." The plain language of the statute covers only persons who leave employment *for the sole or primary purpose of* being with a spouse. An analysis of the "voluntariness" of the decision to leave permits an assessment of this element of the decision to leave work.

The records in three of the cases before this Court clearly show that the reason for claimants' leaving work was "compulsion from outside and necessitous circumstances." Claimants York, Chandler and Nagle left their jobs when their husbands' employers transferred them to new localities. Had the claimants remained employed in Utah, they would have been required to maintain separate households, a financial burden that would have defeated the very purpose of their employment. The record indicates that neither these claimants nor their husbands had any choice in when or where to relocate; the choice was made by

the husbands' employers. In each of these three cases, the determination was made that the claimant quit to join her spouse and *therefore* that the claimant quit "voluntarily without good cause." In none of these cases was there a proper finding of voluntariness as required by the statute, although in each case the evidence supports a finding that the claimant did *not* quit "voluntarily." To deny unemployment compensation to these claimants would defeat the purpose of unemployment compensation, which is to ease the hardship of those who become unemployed through no fault of their own. Therefore, I dissent from the majority's denial of benefits to claimants York, Chandler and Nagle, and I would remand these cases for computation of benefits.

The record regarding claimant Sanderson is less clear. One reference in the record indicates that her husband accepted an entirely new job out of state. Another reference implies a transfer by his employer. A voluntary decision by a couple to *change* jobs and relocate is a life-style decision of the nature described in *Child v. Board of Review of Industrial Commission, supra.* However, a nonvoluntary transfer by an employer may constitute compelling and necessitous circumstances. Therefore, I would remand the Sanderson case for further proceedings to determine whether the claimant's leaving work was in fact voluntary or whether it was due to a nonvoluntary transfer of her husband's employment which necessitated her relocation.

The records in the remaining two cases contain sufficient evidence to support findings that the claimants left work voluntarily to follow or join their spouses in new localities. Claimant Kaller was clearly dissatisfied with the circumstances of her employment. When her husband was offered the opportunity to work for his father in another state, the entire family moved, even though a home had been offered to the husband in the new location, eliminating the economic burden of maintaining two separate households. The couple chose to take the risk of accepting a new job in a new locality, a risk that the Legislature has reasonably determined need not be insured by the state. Claimant Mitchell left her job because she and her husband desired to move to another state in order to be near family members near whom they had not lived for many years. This, too, is clearly a personal decision, the risk of which must be borne by the claimant.

OAKS, Justice:

■ We concur in Parts I and II of Justice Durham's opinion, which hold that the last paragraph of U.C.A., 1953, § 35–4–5(a) is constitutional. However, we differ with Part III of that opinion. As we construe the meaning of § 35–4–5(a), the Department was correct in denying unemployment compensation in all of these cases. Its orders will therefore be affirmed.

The first part of § 35–4–5(a) clearly provides that a claimant will be ineligible for unemployment benefits when he or she "left work voluntarily without good cause...." The last paragraph then provides that a claimant "who has left work voluntarily to accompany, follow or join his or her spouse to or in a new locality does so without good cause for purposes of this subsection."

Part III of Justice Durham's opinion reads "voluntarily" as a separate statutory requirement in the circumstance treated in the last paragraph. Consequently, the Department is criticized for not making "a proper finding of voluntariness as required by the statute...." That opinion would reverse the denial of benefits in four of these cases because the individual circumstances of the four claimants (whose spouses were transferred by their employers) establish that they left their employment because of "compulsion from outside and necessitous circumstances," which shows that they "did *not* quit 'voluntarily.'" We consider that interpretation erroneous.

■ In the context of this statute, "voluntarily" simply means at the volition of the employee, in contrast to a firing or other termination at the behest of the employer. If the employee quit at his or her

own volition, the employee's reasons for doing so are irrelevant to the determination of whether "the claimant left work voluntarily . . . ." There have been legal issues pertaining to voluntariness in a few instances (examples are cited in the footnote [1]), but in the overwhelming majority of cases on unemployment compensation there is no issue on the meaning of "left work voluntarily" and no need for findings on it.

To ameliorate the harshness of the bare voluntariness test, many states, including Utah in § 35–4–5(a), provide that leaving work "voluntarily" will only make the claimant ineligible when it was "without good cause." There are scores of court opinions on the meaning of "good cause." Those dealing with the specific issue presented by the six appeals now before us are discussed in a lengthy annotation, "Eligibility for Unemployment Compensation as Affected by Voluntary Resignation Because of Change of Location of Residence," 21 A.L.R.4th 317 (1983). Significantly, the issue discussed throughout that long annotation (representing the apparent reasoning and holding of virtually all of the cases decided under statutes with a "good cause" exception like Utah's) is not whether the circumstances kept the claimant's quitting from being "voluntary," but whether the circumstances amounted to "good cause." *Id.* at 325–42.

To the same effect, the A.L.R. annotation on unemployment compensation for employees who quit because of harassment or other mistreatment by an employer or supervisor discusses not the "voluntariness" of the employee's departure, but whether the circumstances qualified as "good cause." Annot., 76 A.L.R.3d 1089 (1977).

Similarly, our decision on the effect of job harassment is reasoned in terms of good cause, not voluntariness. *Box Elder County v. Industrial Commission,* Utah, 632 P.2d 839 (1981). If job harassment does not raise an issue of the voluntariness of quitting, how can this issue be raised by the economic or family pressures entailed in the job transfer of a spouse? In each case, the issue is not voluntariness, but "good cause." On that issue, we have sustained a Commission determination that an employee who leaves work to follow a spouse to another location to attend school does so "voluntarily without good cause." *Child v. Board of Review,* Utah, 657 P.2d 1375 (1983)..

■ The last paragraph of § 35–4–5(a), added in 1982, clearly resolves the issue of "good cause" as it pertains to a claimant who has left work voluntarily in order to follow a spouse to a new location. It specifies that this cause for leaving work does not constitute "good cause." [2] The plain meaning of that statute, which we have now held to be constitutional, calls for the denial of benefits in all of these cases. That is the outcome almost invariably directed in states with similar statutes. Cases discussed in Annot., 21 A.L.R.4th at 344–52.

■ The "voluntariness" test urged in the dissenting portion of Justice Durham's opinion (Part III) could easily deprive the last paragraph of § 35–4–5(a) of most of its effect. Using the test of "necessitous circumstances," most spouses affected by the statute could allege that the expense of maintaining two separate households dictated the decision to quit and therefore

---

1. *E.g., West Jordan v. Morrison,* Utah, 656 P.2d 445 (1982) (employee did not leave "voluntarily" when he resigned effective two weeks hence and was then discharged effective immediately); Annot., 90 A.L.R.2d 835 (1963) (courts divided on whether employee's termination as result of union actions or contracts is voluntary or involuntary); Annot., 14 A.L.R.2d 1308 (1950) (courts divided on whether leaving employment because of illness or disability is voluntary or involuntary).

2. Contrary to the suggestion in Part III of Justice Durham's opinion, this interpretation does not deny benefits to an employee who leaves at his or her own volition but with good cause (such as job harassment) and then ends up with a spouse in a new locality. The test of eligibility under this statutory partial definition of "good cause" is the employee's reason for leaving, not his or her destination after departure.

negated voluntariness. But the proposed transfer of a spouse, no less than any other occasion to change residences, confronts a family with a mixture of personal choice and economic necessity. The terms of the statute make it unnecessary to factor out the various elements of that mixture.

The dissent cites two cases as having applied a "voluntariness requirement" in circumstances similar to this case. As explained in the footnote, both are readily distinguishable.[3]

For the reasons set out above, the orders of the Department denying benefits in all these cases are affirmed.

HALL, C.J., and STEWART, HOWE, JJ., concur.

---

3. *Ost v. Catherwood,* 26 A.D.2d 979, 274 N.Y. S.2d 691 (1966), affirmed a *denial* of benefits. The language the dissent quotes from this one-paragraph opinion is a dictum taken out of context. The annotation on this subject cites over twenty New York cases as having held "that a spouse was disqualified, pursuant to statute, from receiving unemployment compensation benefits, where it was established that he or she terminated employment to follow a spouse to a new locality...." 21 A.L.R.4th at 349.

The other case, *Richards v. Unemployment Compensation Board,* 491 Pa. 162, 420 A.2d 391 (1980), held, upon a markedly different statutory provision than Utah's that an employee was eligible for benefits once he or she "demonstrated that the desire to join his or her spouse was not *the predominant reason* for his or her termination of employment." 491 Pa. at 169, 420 A.2d at 395. The employee was held eligible for benefits upon showing that the move that terminated her employment was "compelled by economic necessity" because the family was evicted from rent-free quarters when her husband lost his job.