**Harold C. HURST, Plaintiff,**

v.

**BOARD OF REVIEW OF THE INDUSTRIAL COMMISSION OF UTAH, Department of Employment Security, Defendants.**

No. 860058.

Supreme Court of Utah.

Aug. 4, 1986.

---

Waine Riches, Salt Lake City, for plaintiff.

K. Allan Zabel, Salt Lake City, for defendants.

PER CURIAM:

The claimant Harold C. Hurst seeks review from the decision of the Board of Review denying him unemployment benefits. The Board's decision affirmed an administrative law judge ruling that Hurst did not have good cause to quit and that it was not inconsistent with equity and good conscience to deny him benefits. We affirm.

Hurst was employed as a sales representative with Terra Diamond Industrial, Inc. (Terra Diamond), between May 1, 1984, and August 8, 1985. For the first eight months, he worked his assigned territory of southern California and Nevada while living in Salt Lake City. His rent here was $450 a month. At the employer's request and expense, he moved his wife and five children to Mission Viejo, California, in December of 1984. Hurst's rent in California amounted to $925 a month, with a $50 increase provided in the lease after six months. First and last monthly payments, as well as a cleaning deposit of $300, were paid by Terra Diamond. To cushion the transition, Terra Diamond also provided a six-month housing allowance of $475, the difference between rental in Salt Lake City and Mission Viejo. Hurst's permanent compensation package included a salary of $1,200 a month; commission limited only by the sales he generated; a company car; travel expenses; health, accident and life insurance; sick pay; paid holidays; and vacation.

When Hurst's wife became pregnant, he inquired whether she was covered by his insurance, as she faced delivery by caesarean section, a procedure costing about $7,000 in California and $4,000 in Utah in 1985. Hurst received conflicting information from his employer and the insurance agent, but was eventually told that the birth was not covered, as conception had preceded the initial date of coverage. Hurst decided to bring his wife to Utah for the birth of their child at the beginning of July. He took paid vacation time to do so. While in Salt Lake City, he spoke with the president of Terra Diamond with respect to extending the housing subsidy beyond the six-months previously agreed to. The president referred Hurst's inquiry to the general manager, and Hurst subsequently learned from the secretary that the allowance would not be continued.

Hurst decided that without the subsidy he could not afford to continue living in California and moved his family to Utah where he lived rent-free for awhile and then obtained housing for $450 a month. He did not talk about any alternatives with Terra Diamond, but decided there was nothing else he could do, because the medical bill had left him no money with which to pay rent. His commissions during the first few months had been around $200, so that Hurst had had to supplement his income with withdrawals from savings to support his family. At the time he left Terra Diamond, he averaged $700 a month in commissions. At the hearing, he admitted that commissions were on the increase and that within four to six months he would have been able to "handle it." His last month's earnings were $2,842 and expenses $2,015. Hurst's landlady applied the last month's rent to the payment due in July, and Hurst cashed the check for $250 (cleaning deposit minus $50 increased rent) that the landlady had mistakenly sent to him. The insurance company paid the caesarean delivery of his child subsequent to Hurst's termination of employment.

In his ruling denying Hurst unemployment benefits, the administrative law judge recited the gist of the facts herein set out and based thereon held that Hurst did not establish good cause for his decision to quit and that his actions were not sufficiently reasonable to warrant a conclusion that a

denial of benefits would be contrary to equity and good conscience.

■ Our decision in this case must perforce be in line with our recent holding in *Smith v. Board of Review,* 714 P.2d 1154 (1986), where the claimant was faced with similar interim financial difficulties and was denied unemployment benefits. In reviewing the questions what constitutes good cause and equity and good conscience, we are bound to defer to the Commission so long as its decision falls within the limits of reasonableness and rationality. *Smith, supra,* at 19 and cases there cited.

■ Good cause is established where the unemployment is caused by pressures so compelling that a reasonably prudent person would be justified in quitting under similar circumstances. *Smith, supra; Box Elder County v. Industrial Commission,* 632 P.2d 839 (Utah 1981).

Hurst first complains that the administrative law judge applied the wrong standard by basing the denial of benefits on the fact that the employer had not violated the employment contract nor acted in bad faith. Though that language is found in the administrative law judge's ruling, it is taken from enumerated examples of what constitutes good cause which are based in part on Rule A71–07–1:5 of the Department of Employment Security Rules and Regulations. Though the findings could have been more precise, it is clear that the administrative law judge based them on the facts as they unfolded at the hearing before him and did not restrict them to the two examples cited by Hurst.

■ Hurst correctly states that the Department's Rules and Regulations specifically list actual or potential *economic* harm which is not restricted to actions by the employer. Under that standard, he would persuade us that the decisions in *Bloomfield v. Employment Division,* 25 Or.App. 771, 550 P.2d 1400 (1976), and *Richards v. Commonwealth of Pennsylvania,* 491 Pa. 162, 420 A.2d 391 (1980), should control our ruling in this case. The claimant in *Bloomfield* worked sixty to eighty hours a week for a net profit, after deducting expenses, of $60 a month. Her vehicle and furniture had been repossessed, and she had no money to pay her bills. The claimant in *Richards* earned $68 a week as a school bus driver and had to choose between renting a place supported by $68 or living rent-free having $62 to live on with her husband. The courts in those two cases granted unemployment benefits because de minimis compensation constituted good cause for quitting. A monthly income of $2,842 does not merit treatment as de minimis compensation. Hurst had steady employment and the very real prospect of increasing his commissions. The administrative law judge could well have found no good cause to quit, because a reasonable person under similar circumstances would not have sacrificed the security of income in the face of what turned out to be a temporary economic buffet.

■ Similarly, the record evidence supports the finding of the administrative law judge that Hurst did not act reasonably, so that it would not be contrary to equity and good conscience to deny him benefits. The administrative law judge found that Hurst's commissions were increasing on a regular basis and that if the trend had continued, his financial pressures would have subsided considerably within a few months. Those findings are supported by competent evidence. On questions of fact, the Commission's findings are conclusive and not subject to review by this Court unless they are without substantial support in the record and thus clearly arbitrary and capricious. *Sessions v. Board of Review,* 717 P.2d 1311 (1986); *Utah Department of Administrative Services v. Public Service Commission,* 658 P.2d 601 (Utah 1983); *Salt Lake City Corp. v. Department of Employment Security,* 657 P.2d 1312 (Utah 1982). The findings here are well substantiated by the evidence.

Affirmed.

STEWART, J., dissents.